UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

| | |
|---|---|
| GREGORY BARTON, | Docket No. |
| | 12 Civ. 0881 LTS |
|        Plaintiff, | |
| | ECF CASE |
|    -against- | |
| | COMPLAINT |
| MARTHA STEWART LIVING | |
| OMNIMEDIA, INC.; | JURY TRIAL |
| MARTHA STEWART LIVING | DEMANDED |
| OMNIMEDIA, INC. 2005 | AS TO ALL ISSUES |
| EXECUTIVE SEVERANCE | TRIABLE BY JURY |
| PAY PLAN; COMPENSATION | |
| COMMITTEE OF THE BOARD OF | |
| DIRECTORS OF MARTHA STEWART | |
| LIVING OMNIMEDIA, INC.; and | |
| JOHN DOES 1-10, | |
| | |
|        Defendants. | |

--------------------------------------------------X

Plaintiff, Gregory Barton ("Barton"), by his attorneys, Law Offices of Michael G. Berger, for his Complaint against the defendants, alleges as follows:

## NATURE OF THE CASE

1.    This is an action for intentional and bad faith breach and willful and malicious violation of statutory, fiduciary, contractual, and common law duties under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), the New York State Labor Law at Art. 6, N.Y. Lab. Law § 190, *et seq.* ("Labor Law"), and

the written agreements between and among the parties. The action arises out of defendants' deliberate failure and persistent refusal to pay Barton a severance payment in an amount guaranteed to him pursuant to written agreements with the defendants.

2.       Barton seeks (a) damages totaling $761,600, consisting of (i) compensatory damages of $380,800 under ERISA and his written agreements with defendants; and (ii) statutory liquidated damages of $380,800 for defendants' willful violation of Labor Law; together with (b) reasonable attorney's fees under ERISA and Labor Law; (c) punitive damages to the extent allowed by law; (d) interest and the costs and disbursements of this action; and (e) such other and further relief as this Court deems proper.

## THE PARTIES

3.       Plaintiff Gregory Barton is a citizen of the State of New York, residing in Westchester County. Barton is a *magna cum laude* graduate of Harvard Law School, and has served as general counsel of a number of public or private-equity owned technology and media companies since 1995.

4.       Defendant Martha Stewart Living Omnimedia, Inc. (the "Company") is a Delaware company licensed and qualified to do

5.      Defendant **Martha Stewart Living Omnimedia, Inc. 2005 Executive Severance Pay Plan** (the "**Plan**") is an executive severance pay plan created under and subject to compliance with ERISA and effective as of January 1, 2005 by and through its adoption by the Company.

6.      Defendant **Compensation Committee of the Board of Directors of the Company** (the "**Compensation Committee**") serves as Plan Administrator (the "**Plan Administrator**") of the Plan pursuant to its express written terms.

7.      As more fully detailed below, the Company administers the Plan by and through the Compensation Committee, funds the Plan, and pays all Plan benefits from the Company's general assets.

8.      Defendants **John Doe 1-10** are or were fiduciaries of the Plan by reason of membership on the Compensation Committee during all relevant times alleged in the Complaint, or otherwise conspired with, acted in concert with, or induced such fiduciaries to breach the

## JURISDICTION AND VENUE

9.     This is a civil enforcement action for, *inter alia*, breach of fiduciary duty, brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the Labor Law and other non-ERISA claims pursuant to 28 U.S.C. § 1367(a).

10.     ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the defendants are citizens or residents of the United States or do business in the United States, and this Court therefore has personal jurisdiction over them.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that, *inter alia*: (a) the parties entered into the contracts at issue and conducted business in or through this District in connection therewith; (b) all or a substantial part of the events giving rise to the claim occurred in this District; and (c) the Company has its principal executive offices in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.    **The Company's Hiring of Barton
and Entry into the Employment Contract**

12.    In or about the summer and fall of 2007, the Company recruited Barton to become its General Counsel and Secretary. At such time, Barton had served for over a dozen years as general counsel (as well performing a variety of business and finance roles) at a number of public or private-equity owned technology and media companies. Prior his general counsel roles, Barton had worked at a prominent national law firm after graduating from law school.

13.    On or about October 1, 2007, Barton and the Company entered into a written employment contract (the "Employment Contract"), pursuant to which Barton was to serve as General Counsel and Secretary of the Company in a full-time capacity. After entering into the Employment Contract, Mr. Barton gave notice to his then-

14.     The Employment Contract, under the heading "Compensation," provided for an annual base salary of "not less than $400,000." Exhibit 1 at p. 1, ¶ 4.

15.     The Employment Contract, under the heading "Bonus," also provided for "an annual target bonus of seventy percent (70%) of your base salary," which annual target bonus equaled $280,000 (70% of the base salary of $400,000). Exhibit 1 at p. 1, ¶ 5.

16.     The Employment Contract further provided, under the heading "Severance," that Barton would be a participant in the Company's 2005 Executive Severance Pay Plan and expressly incorporated the Plan by reference, except that as so incorporated the Plan was "deemed to have no expiration date." Exhibit 1 at p. 4, ¶ 13.

**B.     The Plan's Purposes, Protections, and Other Provisions**

17.     The Plan, a copy of which is attached as Exhibit 2, expressed its purpose on the first page as follows:

> *The purpose of the Plan is to better provide for the retention of key executives through providing them with a higher*

*degree of financial security, on the terms and conditions hereinafter stated.* **The Plan is intended to be a severance pay plan governed by Title I of ERISA primarily for the purpose of providing benefits for a select group of management or highly compensated employees. All benefits under the Plan will be paid solely from the general assets of the Company.** (emphasis added)

18.    The Plan provided, at Section 2.05, under the heading "Amount of Severance Payment," that an "Eligible Participant" -- which, per Section 2.02 and the Definitions section, included a Participant such as Barton, who experienced a "Qualifying Involuntary Termination" such as the termination without cause that Barton experienced -- "shall receive" certain specified severance payments. Exhibit 2 at pp. 2-4.

19.    The Amount of the Severance Payment included three components, only two of which are at issue in this proceeding:

(i) a "Pro-Rata Bonus," which was defined in relevant part in the Definitions section as follows: "'Pro-Rata Bonus' means, with respect to the fiscal year in which an Eligible Participant's Employment Severance Date occurs, an amount equal to the Eligible Participant's target annual bonus multiplied by a fraction, the numerator of which is the number of days that have elapsed in such fiscal year through and including the Employment Severance Date and the denominator of which is 365; . . .";

(ii) "continued payment of his or her base salary during the period from his or her Employment Severance Date until the first anniversary of his or her Employment Severance Date, at the rate in effect as of his or her Employment Severance Date" [which is not at issue]; and

> **(iii) "a one-time bonus payment equal to 100% of such Eligible Participant's target annual bonus in effect as of his or her Employment Severance Date."**

**Exhibit 2 at pp. 3-4, Section 2.05.**

20.    Significantly, Section 2.05 of the Plan also provided in relevant part as follows:

> **For purposes of this Section 2.05, no reduction in salary or target annual bonus of an Eligible Participant shall be taken into account in determining his or her severance benefits, if such reduction formed the basis of a claim for Voluntary Termination for Good Reason or was instituted just prior to, or after, the giving of an employment termination notice by the Company or the Eligible Participant.**

In other words, as an additional protection for Participants, the target annual bonus, which served as the basis for both of the calculations at issue, could not be reduced for purposes of such calculations by a change in salary or target bonus imposed upon a Participant shortly before or at any time after a Participant was terminated.

**C.    The Company's Non-Cause Termination of Barton and the Defendants' Failure and Refusal to Honor Their Obligations**

21.    On or about August 6, 2008, the Company terminated Barton's employment without cause, effective that day. Barton's termination without cause occurred during a period of significant changes in the Company's Board and executive management, closely

8

22.    Upon such termination, pursuant to the Employment Contract and the Plan, Barton became entitled to a severance payment in the amount expressly set forth in the Plan. As Barton's base salary on the Employment Severance Date was $400,000 and his target annual bonus was 70% of his base salary (both of which were expressly set forth in the Employment Contract and not ever modified), he was entitled to a payment under Section 2.05(a)(iii) of the Plan of 100% of his target annual bonus of $280,000 (i.e., 70% of $400,000).

23.    In addition, Barton was entitled to a "Pro-Rata Bonus" payment under Section 2.05(a)(i) of the Plan, representing the $280,000 target annual bonus, multiplied by the pro rata portion of the year 2008 that he had worked as set forth in the definition of "Pro-Rata Bonus" in the Plan.  Since Barton had worked 219 days in 2008 as of August 6, 2008, he was entitled to $168,000, which represented $280,000 multiplied by 219/365.

24.    The total of these two sub-payments owed under Section 2.05 of the Plan was $448,000 (i.e., $280,000 plus $168,000).  Barton also was entitled under Section 2.05(ii) of the Plan to continued payment of base salary as provided therein, which is not at issue here. He also was entitled to certain severance benefits under Section 2.07 of the Plan, which also are not at issue here.

25.    Barton complied with all required claims procedures and expressly requested payment of his severance payment in the amount guaranteed under the Employment Contract and the Plan. See Exhibit 3, Barton's August 5, 2008 email to his successor as General Counsel and the Company's Chief Financial Officer. Barton requested that payments of the severance amounts due pursuant to Section 2.05 of the Plan be delayed to February 2009 (or upon Barton's death, if earlier), to

26.     By letter dated February 17, 2009, Tina Mohyla, "Comp & Benefits Manager," on behalf of all defendants, informed Barton that although the defendants agreed to pay him the base salary portion of the severance payment (which was owed pursuant to Section 2.05(a)(ii) of the Plan), they *refused* to pay him more than 15% of either the one-time bonus payment equal to "100% of [his] target annual bonus in effect as of his . . . Employment Severance Date" (which was owed pursuant to Section 2.05(a)(iii) of the Plan), *or* the Pro-Rata Bonus (which was owed pursuant to Section 2.05(a)(i) of the Plan). A copy of Ms. Mohyla's February 17, 2009 letter is attached as Exhibit 5.  The letter was delivered to Barton's home on or about February 18, 2009 while Barton was out of state; Barton first saw the letter on or about February 21, 2009.

27.     Instead of making a severance payment in the amount expressly provided for in the Employment Contract and the Plan, Ms. Mohyla, on Company letterhead, on behalf of the defendants, claimed

28.     Despite their clear and unambiguous understanding of and written agreement to pay the $448,000 amount due Barton pursuant to Section 2.05(i) and 2.05(iii) of the Plan, defendants unilaterally decided, in violation of the Employment Contract, the Plan and the law, to pay Barton:

- $42,000, representing *15%* (instead of the required 100%) of the $280,000 owed to Barton under Section 2.05(a)(iii) of the Plan (one half of which was paid in mid-February 2009 and the balance later), a shortfall of $238,000; and

- $25,200, representing *15%* of the $168,000 Pro-Rata Bonus owed to Barton under Section 2.05(a)(i) of the Plan, a shortfall of $142,800, resulting in

- a total shortfall of amounts owed to Barton under Section 2.05(i) and 2.05(iii) of the Plan of $380,800.

29.     The rationale offered in Ms. Mohyla's letter is unavailing. First, as noted at ¶ 19, above, the Plan at Section 2.05 prohibited defendants from taking "into account in determining [Barton's] severance benefits" a reduction in "target annual bonus" "instituted just prior to, or after, the giving of an employment termination notice by the Company . . ." but defendants purported to take "into account" reductions in the *actual* bonuses (as opposed to target bonuses) of

30.    Second, in addition to the fact that defendants could not take "into account" a reduction in Barton's target annual bonus even if one *had* occurred, Barton's *target* annual bonus *was in fact never reduced* in any event.  The Company may have determined to pay employees an amount less than their respective target bonuses for 2008, but the *targets themselves* were never changed.    That is, per Ms. Mohyla's letter, the Company decided to pay only 15% of an employee's target bonus, as opposed to determining to pay 100% of a target that had been retroactively reduced by 85%.  The Company's filings with the Securities and Exchange Commission ("SEC") make this clear. Most compellingly, on page PS27 of the Company's proxy statement filed with the SEC on March 31, 2009, after defendants had already underpaid Barton, the Company acknowledged and represented in a table that Barton's "Target" bonus was $280,000. See Exhibit 6.

31.    In addition, in a Form 8-K filed by the Company on February 12, 2009, the Company stated that "On February 6, 2008 [sic], the Compensation Committee . . . determined that, other than the

32.     Further, in every single proxy statement the Company has filed with the SEC (going back to March 2000), the Company has stated that executive target bonuses are set as a percentage of base salary; and recent proxy statements describe the dollar amount of the target, the dollar amount of the bonus actually paid as well as expressing the actual amount paid *as a percentage of the target* (whether greater than or less than 100% of such target).

33.     Thus, the amount ultimately paid to an executive, whether higher or lower than the executive's target annual bonus, did not retroactively alter the amount of the executive's target for the year.

34.     It also is relevant to note that per the Company's February 12, 2009 Form 8-K, the Compensation Committee decided *on February 6, 2009* to pay cash bonuses to the Company's named executive officers of not more than 15% of such employee's target. See Exhibit 7. Even if defendants claimed that Barton's *target* annual bonus had been changed (which it never was), such change would not have occurred until at least

35.    Finally, Ms. Mohyla's letter is not accurate in stating that bonus payments were made to employees at only 15%.  The Company's February 12, 2009 Form 8-K noted that the Compensation Committee determined that *cash* bonus payments would be no more than 15% of an executive's target cash award; however, at the same meeting of the Compensation Committee at which such decision was made, the Compensation Committee also approved a new type of award to be given to Company executives.  This brand new type of award for executives, given at the time the annual bonuses were to be paid, as a practical matter reflects consideration related to the 2008 bonus.  (The new type of award was performance-based restricted stock units that originally were scheduled to vest only if certain performance metrics were achieved, but the Compensation Committee later decided that even though the performance criteria for vesting would not be achieved, the Compensation Committee would eliminate the performance-based

36.    Put simply, the amount of the severance payment owed to Barton pursuant to the Employment Contract and Plan at issue herein was fixed and based upon specific percentages of Barton's target annual bonus, which target *never* changed. No unilateral decision by the Company to make cash payments to other executives in other percentages of their target bonuses, which targets were also not changed, could possibly justify defendants' action toward Barton.

**D.    Barton's Unsuccessful Attempts to Obtain Compliance,
      and Defendants' Refusal to Comply with Their Obligations**

37.    On March 18, 2009, Barton protested defendants' failure and refusal to honor their obligations and stated "I would like to receive the other 85% of the bonus amounts" that were not paid.  See Barton's March 18, 2009 email to his successor, attached as Exhibit 8.   In response, he was contacted by outside counsel to the Company and told to direct communications regarding this matter to him. Barton had discussions with outside counsel on three separate occasions in March and April of 2009.

38.    On April 20, 2009, Barton sent the outside counsel to the Company, who was acting on behalf of all defendants, a detailed 12-

payments to terminated executives under Sections 2.05(i) and 2.05(iii) of the Plan based upon 100% of the target annual bonus of the applicable executive, notwithstanding the fact that the Company later determined to fund the aggregate bonus pool for the termination year at less than 100% of target and to pay its then-current executives less than 100% of their respective target annual bonuses.

Exhibit 9 at p. 2.

39.    Barton went on to provide outside counsel with specific examples of such payments at 100% of the target amounts under the Plan, including terminations involving a former General Counsel, a former President of the Company's television division, and a former President of the Company's publishing division. Exhibit 9 at p. 2.

40.    Barton also advised outside counsel in writing of the Company's public statements which "evidence a decades-long practice of treating target annual bonuses as being fixed for a given year, regardless of the ultimate percentage of such target the Company

41.    Despite this detailed and comprehensive submission, neither outside counsel nor any representative of any of the defendants ever responded to Barton's April 20, 2009 letter.

42.    On September 16, 2011, in a final attempt to avoid litigation, Barton wrote to the current Chief Administrative Officer and General Counsel for the Company, restating his position and his demand. See Exhibit 10. On October 5, 2011, the current General Counsel replied that he was "not in a position to accede" to Barton's request for payment of the amounts still owed to him under the Employment Contract and Plan. See Exhibit 11. No other representative of defendants ever responded to Mr. Barton's September 16, 2011 letter.

43.    This lawsuit followed.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### Breach of Fiduciary Duty Under an ERISA Plan

44.    Barton repeats and realleges each and every allegation set forth in paragraphs 1 through 43 as if fully set forth herein.

45.    At all relevant times, as alleged above, all defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

46.    Pursuant to ERISA § 502(a)(1), 29 U.S.C. 1132(a)(1), Barton, as a Participant in the Plan, may bring this civil action to recover benefits due to him under the Plan and otherwise enforce his rights.

47.    By failing and refusing to pay Barton the required amount of the severance payment expressly set forth in the Plan, all defendants violated their fiduciary obligations under ERISA.

48.    Such violations were willful and in bad faith, and in wanton and reckless disregard of Barton's rights. If not deterred by the imposition of punitive damages, such conduct will threaten the security of all participants under ERISA and the general public.

49.    By reason of the foregoing, all defendants are jointly and severally liable for the damages suffered by Barton by their violations of their fiduciary and other duties, in the amount of not less than $380,800, plus such other and further rights and remedies as are available to Barton under ERISA, including punitive damages to the extent provided by law, and reasonable attorney's fees.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

### Liability for Breach of Fiduciary Duty by a Co-Fiduciary

50.    Barton repeats and realleges each and every allegation set forth in paragraphs 1 through 49 as if fully set forth herein.

51.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if, as is the case here, (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

52.    By reason of the foregoing, all defendants are jointly and severally liable for the damages suffered by Barton by their violations of their fiduciary and other duties, in the amount of not less than $380,800, plus such other and further rights and remedies as are available to

## THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

### Injunctive and Other Equitable Relief

53.     Barton repeats and realleges each and every allegation set forth in paragraphs 1 through 52 as if fully set forth herein.

54.     Pursuant to ERISA, § 502(a)(3), 29 U.S.C. § 1132(a)(3), a Participant may enjoin any violation of ERISA or the Plan, or obtain other appropriate equitable relief.

55.     By reason of the foregoing, Barton is entitled to a declaration that defendants have violated his rights under ERISA, to an injunction against any further violation, and to restoration of all benefits owed to him, plus reasonable attorney's fees.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

### Breach of Contract Under the Employment Contract

56.     Barton repeats and realleges each and every allegation set forth in paragraphs 1 through 55 as if fully set forth herein.

57.     The Employment Contract is a contract as to which Barton and each of the defendants, by and through each other, is a contracting party.

21

58.    By reason of the foregoing, all defendants are jointly and severally liable for the damages suffered by Barton by their violations of their contractual and other duties, in the amount of not less than $380,800.

### FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

### Breach of Contractual Duties Under an ERISA Plan

59.    Barton repeats and realleges each and every allegation set forth in paragraphs 1 through 58 as if fully set forth herein.

60.    An ERISA plan is a contract, and all of the defendants are contracting parties, by and through each other.

61.    By reason of the foregoing, all defendants are jointly and severally liable for the damages suffered by Barton by their violations of their fiduciary and other duties, in the amount of not less than $380,800, plus such other and further rights and remedies as are available to Barton under ERISA, including punitive damages to the extent provided by law, and reasonable attorney's fees.

### SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

### Breach of Fiduciary Duties Under an Employment Contract

62.    Barton repeats and realleges each and every allegation set forth in paragraphs 1 through 61 as if fully set forth herein.

63.    Barton's Employment Contract establishes fiduciary duties.

22

64.    By reason of the foregoing, all defendants are jointly and severally liable for the damages suffered by Barton by their violations of their fiduciary and other duties under the Employment Contract, in the amount of not less than $380,800, plus punitive damages to the extent provided by law.

## SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

### Breach of the Implied Covenant of Good Faith and Fair Dealing

65.    Barton repeats and realleges each and every allegation set forth in paragraphs 1 through 64 as if fully set forth herein.

66.    Every contract in New York is subject to the implied covenant of good faith and fair dealing. That implied covenant provides that a party to a contract may not act to destroy the value of the contract to the other party. See 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002).

67.    By reason of the foregoing, all defendants have violated the implied covenant of good faith and fair dealing, damaging Barton in the amount of not less than $380,800, and all defendants are jointly and severally liable for those damages suffered by Barton.

## EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

### Violation of the Labor Law

68.    Barton repeats and realleges each and every allegation set forth in paragraphs 1 through 67 as if fully set forth herein.

69.    The Company employed Barton at all relevant times, and was therefore an employer as a matter of law with regard to him. The Plan and Plan Administrator so dominated and controlled the amount and payment of Barton's severance under the Employment Contract so as to constitute co-employers liable for aiding and abetting the Company in its breach of its obligations to pay the amounts required to be paid under the Employment Contract.

70.    New York law has a statutory scheme for the purpose of protecting employees by prohibiting employers from making deductions in or otherwise failing to pay them their wages. As such, New York State Labor Law Article 6 prohibits such activity except in accordance with the law or a government rule or regulation, or when authorized by the employee in writing, neither of which exclusion applies in this case. See N.Y. Lab. Law §§ 191 and 193.

71.    For the purposes of Labor Law statute, an employee is defined as "any person employed for hire by an employer in any

<u>See</u> N.Y. Lab. Law § 190(2). In accordance with this broad definition, the use of the term in Article 6 and elsewhere in the Labor Law, and the legislative history surrounding Article 6, the definition of "employee" includes executives, professionals, managers, and administrators. <u>See</u> <u>Pachter v. Hodes,</u> 541 F.3d 241 (2d Cir. 2008); <u>Eschelbach v. CCF Charterhouse,</u> 2006 WL 27094 (S.D.N.Y. 2006) (adhered to on reconsideration, 2006 WL 2057205 (S.D.N.Y. July 25, 2006); <u>Miteva v. Third Point Mgmt. Co.,</u> 323 F.Supp.2d 573 (S.D.N.Y. 2004).

72.    Wages are defined by the Labor Law statute as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." <u>See</u> N.Y. Lab. Law § 190(1).

73.    Guaranteed bonuses, such as those Barton was entitled to receive pursuant to the severance provision of the Employment Contract in connection with a termination of his employment without cause, constitute wages within the meaning of Labor Law §§ 193 and 198. Further, Labor Law § 190(1) defines wages to include separation pay by engrafting § 198-c (which provides at subsection (2) that such payments are included). Since the amounts due Barton under the

74.     By reason of the foregoing, all defendants have violated Labor Law, §§ 193 and 198, and the related sections.

75.     Further, since April 9, 2011, Labor Law § 198 provides a 100% penalty and attorney's fees, unless the employer can prove "a good faith basis to belief that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a).

76.     By and through several written demands (including those attached hereto as Exhibits 3, 4, 8, 9, and 10), Barton put all defendants on express written notice of his entitlement to the severance payment in the amount required. Defendants have not and cannot prove their good faith in failing and refusing to make the required payment.

77.     Accordingly, Barton is entitled to, and all defendants are jointly and severally liable for, (a) the severance payment in the amount required, in the aggregate amount of $380,800; plus (b) liquidated damages in the amount of 100% of that sum, in the amount of $380,800, for a total of $761,600; plus (c) reasonable attorney's fees under Labor Law § 198(1-a).

**WHEREFORE, plaintiff Gregory Barton demands judgment against all defendants as follows:**

**a.** **On the First Claim for Relief, judgment against the defendants in an amount to be determined at trial, but believed to be not less than $380,800, plus punitive damages to the extent allowed by law, and reasonable attorney's fees;**

**b.** **On the Second Claim for Relief, judgment against the defendants in an amount to be determined at trial, but believed to be not less than $380,800, plus punitive damages to the extent allowed by law, and reasonable attorney's fees;**

**c.** **On the Third Claim for Relief, a declaration that defendants have violated his rights under ERISA, an injunction against any further violation, and restoration of all benefits owed to him, plus reasonable attorney's fees;**

**d.** **On the Fourth Claim for Relief, judgment against the defendants in an amount to be determined at trial, but believed to be not less than $380,800;**

**e.** **On the Fifth Claim for Relief, judgment against the defendants in an amount to be determined at trial, but believed to be not less than**

$380,800, plus punitive damages to the extent allowed by law, and reasonable attorney's fees;

f.    On the Sixth Claim for Relief, judgment against the defendants in an amount to be determined at trial, but believed to be not less than $380,800, plus punitive damages to the extent allowed by law;

g.    On the Seventh Claim for Relief, judgment against the defendants in an amount to be determined at trial, but believed to be not less than $380,800; and

h.    On the Eighth Claim for Relief, judgment against the defendants in an amount to be determined at trial, but believed to be not less than $761,600, plus reasonable attorney's fees;

i.    Together with costs, disbursements, interest, and such other and further relief as to this Court may seem proper.

Dated:    New York, New York
          February 3, 2012

LAW OFFICES OF MICHAEL G. BERGER

By _____
          Michael G. Berger (MB 2349)

250 Park Avenue, 20th Floor
New York, NY 10177
(212) 983-6000
*Attorneys for Plaintiff*
*Gregory Barton*

H:\Barton\complaint.v10.doc

28

ALL-STATE LEGAL®
07181-BF • 07182-BL • 07183-GY • 07184-WH
800.222.0510 www.aslegal.com

*Index No.*               *Year 20*

**DOCKET NO. 12 Civ.**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**GREGORY BARTON,**

<strong>Plaintiff,</strong>

V.

**MARTHA STEWART LIVING OMNIMEDIA, INC.; MARTHA STEWART LIVING OMNIMEDIA, INC. 2005 EXECUTIVE SEVERANCE PAY PLAN; COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF MARTHA STEWART LIVING OMNIMEDIA, INC.; and JOHNS DOES 1-10,**

<strong>Defendants.</strong>

<strong><u>SUMMONS AND COMPLAINT</u></strong>

<strong>MICHAEL G. BERGER</strong>

*Attorney for* **Plaintiff**

250 PARK AVENUE
TWENTIETH FLOOR
NEW YORK, N.Y. 10177
(212) 983-6000

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:* 2/3/12 ..................................      Signature ..........................................

                                Print Signer's Name *Michael G Berger*

*Service of a copy of the within* ..................................      *is hereby admitted.*

*Dated:* ..........................................

<em>Attorney(s) for</em>

*PLEASE TAKE NOTICE*

☐ NOTICE OF ENTRY    *that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within-named Court on*        *20*

☐ NOTICE OF SETTLEMENT    *that an Order of which the within is a true copy will be presented for settlement to the*
*Hon.*                    *, one of the judges of the within-named Court,*
*at*
*on*            *20*      *, at*        *M.*

*Check Applicable Box*

*Dated:*

<strong>MICHAEL G. BERGER</strong>

<em>Attorney for</em>

250 PARK AVENUE
TWENTIETH FLOOR
NEW YORK, N.Y. 10177

*To:*