UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

GREGORY BARTON,                                          12 Civ. 0881 (LTS)

                          Plaintiff,

             -against-

MARTHA STEWART LIVING OMNIMEDIA,
INC.; MARTHA STEWART LIVING
OMNIMEDIA, INC. 2005 EXECUTIVE
SEVERANCE PAY PLAN; and COMPENSATION
COMMITTEE OF THE BOARD OF DIRECTORS
OF MARTHA STEWART LIVING
OMNIMEDIA, INC.,

                          Defendants.

-----------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

John R. Cuti
Julie B. Ehrlich
Cuti Hecker Wang LLP
305 Broadway, Suite 607
New York, NY 10007
(212) 620-2601

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ......................................................................................................................... 6

   I.   Legal Standard ......................................................................................................... 6

   II.  Barton's State-Law Claims Are Preempted by ERISA ......................................... 7

   III.  Barton's Sole Remaining ERISA Claim is Time-Barred.................................... 13

   IV.  If Barton's ERISA Claim Survives, All Claims Against the Company
         Should Be Dismissed......................................................................................... 19

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ............................................................................................ 8, 10

*Aminoff v. Ally & Gargano, Inc.*,
   No. 95 Civ. 10535, 1996 WL 675789 (S.D.N.Y. Nov. 21, 1996) ........................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................. 6

*Barnes v. Am. Int'l Life Assur. Co. of N.Y.*,
   681 F. Supp. 2d 513 (S.D.N.Y. 2010) ................................................................. 15

*Beattie & Osborn LLP v. Patriot Scientific Corp.*,
   431 F. Supp. 2d 367 (S.D.N.Y. 2006) ................................................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2006) ............................................................................................ 6

*Berman v. Sugo*,
   580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................................................. 2

*Buce v. Allianz Life Ins. Co.*,
   247 F.3d 1133 (11th Cir. 2001) .......................................................................... 14

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
   572 F.3d 76 (2d Cir. 2009) ................................................................................. 16

*DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*,
   448 F.3d 918 (6th Cir. 2006) ......................................................................... 14, 15

*DelCostello v. Int'l Bhd. of Teamsters*,
   462 U.S. 151 (1983) ...................................................................................... 13, 14

*Demery v. Extebank Deferred Comp. Plan (B)*,
   216 F.3d 283 (2d Cir. 2000) ............................................................................... 13

*Devlin v. Transportation Commc'ns Int'l Union*,
   173 F.3d 94 (2d Cir. 1999) ............................................................................. 7, 11

*District of Columbia v. Greater Wash. Bd. of Trade*,
   506 U.S. 125 (1992) ........................................................................................... 11

*Engler v. Cendant Corp.*,
   380 F. Supp. 2d 136 (E.D.N.Y. 2005) ............................................................... 11

*Gilbert v. Burlington Indus., Inc.*,
   765 F.2d 320 (2d Cir. 1985)....................................................... 8, 9, 11, 12

*Greenberg v. Aetna Life Ins. Co.*,
   421 F. App'x 124 (2d Cir. 2011) ................................................................... 15

*Hardt v. Reliance Standard Life Ins. Co.*,
   --- U.S. ---, 130 S. Ct. 2149 (2009).............................................................. 6

*Henry v. Dow Jones*,
   No. 08 Civ. 5316, 2009 WL 210680 (S.D.N.Y. Jan. 28, 2009)............................... 11

*In re Am. Int'l Group, Inc. 2008 Sec. Litig.*,
   741 F. Supp. 2d 511 (S.D.N.Y. 2010) ........................................................ 2, 7

*In re Pfizer Inc. Sec. Litig.*,
   584 F. Supp. 2d 621 (S.D.N.Y. 2008) .......................................................... 6

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
   No. 11 Civ. 539, 2011 WL 2936013 (S.D.N.Y. July 14, 2011 ............................... 12

*Keiser v. CDC Inv. Mgmt. Corp.*,
   160 F. Supp. 2d 512 (S.D.N.Y. 2001) ......................................................... 10

*Kishter v. Principal Life Ins. Co.*,
   186 F. Supp. 2d 438 (S.D.N.Y. 2002) ......................................................... 10

*Klaxon Co. v. Stentor Electric Manufacturing Co.*,
   313 U.S. 487 (1941)................................................................................. 13

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985)................................................................................. 12

*Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension Ben. Plan*,
   698 F.2d 593 (2d Cir. 1983)...................................................................... 13

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
   514 U.S. 645 (1995)................................................................................. 12

*Nelson v. Nielson Media Research Inc.*,
   207 F. Supp. 2d 300 (S.D.N.Y. 2002) ........................................................... 7

*Nowak v. Ironworkers Local 6 Pension Fund*,
    81 F.3d 1182 (2d Cir. 1996) ..................................................................... 6

*Paneccasio v. Unisource Worldwide, Inc.*,
    532 F.3d 101 (2d Cir. 2008) ................................................. 9, 11, 13, 19

*Phelan v. LOCAL 305*,
    973 F.2d 1050 (2d Cir. 1992) ................................................................. 13

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987) ......................................................................... 7, 8, 9, 12

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ..................................................................... 2

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) ..................................................................................... 8

*Syed v. Hercules, Inc.*,
    214 F.3d 155 (3d Cir. 2000) ..................................................... 13, 14, 18

*Tappe v. Alliance Capital Mgmt. LP*,
    177 F. Supp. 2d 176 (S.D.N.Y. 2001) ................................................... 9

*Viti v. Guardian Life Ins. Co. of Am.*,
    817 F. Supp. 2d 214 (S.D.N.Y. 2011) ................................................. 16

*Wang Labs., Inc. v. Kagan*,
    990 F.2d 1126 (9th Cir. 1993) .................................................. 14, 15, 17

*Yuhas v. Provident Life & Cas. Ins. Co.*,
    162 F. Supp. 2d 227 (S.D.N.Y. 2001) ................................................. 16

**STATUTES**

29 U.S.C. § 1113 ................................................................................................ 13

Del. Code Ann. tit. 10, § 8106 ..................................................................... 18

Del. Code. Ann. tit. 10, § 8111 ..................................................................... 18

ERISA § 514, 29 U.S.C. § 1144 ................................................................. 7, 8

ERISA § 502, 29 U.S.C. § 1132 ........................................................... passim

New York Labor Law § 193 ........................................................................... 11

**RULES**

Federal Rules of Civil Procedure, Rule 12(b)(6) ........................................................................ 6

**OTHER AUTHORITIES**

Patrick J. Borchers, *Choice of Law in the American Courts in 1992*,
   42 Am. J. Comp. L. 125, 136 (1994) ...................................................................... 15

Restatement (Second) of Conflict of Laws (the "Restatement") § 187 ........................... 15, 16, 17

U.S. Dep't of Labor Advisory Opinion No. 94-27A (July 14, 1994),
   *available at* http://www.dol.gov/ebsa/ ...................................................................... 11

## PRELIMINARY STATEMENT

For the nine months from approximately October 29, 2007 until he was fired in early August 2008, Plaintiff was the Secretary and General Counsel of Martha Stewart Living Omnimedia, Inc. (the "Company" or "MSLO"), a Delaware corporation.  MSLO paid Barton nearly $1.4 million in total compensation for his short stint as one of its executives, including nearly a million dollars in severance benefits.  Plaintiff received this large sum because he negotiated successfully for it.  As a Harvard-trained attorney, he was careful to get just the benefits he wanted, including a $210,000 signing bonus, and, as relevant to this motion, the right to receive severance payments as provided under the Company's 2005 Executive Severance Pay Plan, even though such Plan expired at the end of 2007 as to all other MSLO employees.  Although MSLO generously compensated Plaintiff for his nine months' work, he has filed this ERISA case seeking still more money.  But his Amended Complaint contains nothing but preempted or time-barred claims, all of which must be dismissed as a matter of law.

First, every claim Barton asserts under New York law is essentially a claim for benefits under an ERISA plan and therefore preempted by ERISA.  That ERISA bars his state-law claims should have been obvious to Plaintiff before he asserted them in the Complaint because the law is so settled, and should have been painfully clear after the Defendants, pursuant to this Court's Individual Practices, explained in detail that ERISA's extraordinarily broad preemptive scope plainly covered these claims.  Yet, the Amended Complaint asserts plainly preempted state-law claims.  They must be dismissed.

Second, Plaintiff—a sophisticated and experienced General Counsel and senior executive of numerous Delaware companies—negotiated very carefully to be a participant in the 2005 MSLO Executive Severance Pay Plan (the "Plan" or the "2005 Executive Severance

Plan"). Though he insisted on changes in the Plan that benefited him, Plaintiff accepted the

Plan's provision that Delaware law would govern the only aspect of a claim for benefits under

the Plan not preempted by ERISA:  the statute of limitations.  The applicable Delaware

limitations period is one year.  That period elapsed long ago.  Because Barton's sole colorable

claim—for benefits under an ERISA Plan—is time-barred, it must be dismissed.

Perhaps the best evidence that Plaintiff knows his claim for recovery of additional Plan

benefits is time-barred is his stubborn insistence upon pressing alternative state-law claims that

are plainly preempted by ERISA.  But frivolous claims cannot save a time-barred claim.   For the

reasons that follow, the Court should dismiss the Amended Complaint in its entirety.

## BACKGROUND

Plaintiff Gregory Barton was MSLO's General Counsel and Secretary for nine months,

from approximately October 29, 2007, until his employment was terminated on or about August

5, 2008.  Amended Complaint ("Am. Compl.") ¶ 20; *id.* Ex. 1 ¶ 2.  MSLO is a Delaware

corporation.  Am. Compl. ¶ 4 & Ex. 7.  Barton's base salary was $400,000 a year.  Am. Compl.

Ex. 1 ¶ 4.[1]  The Company's separation of Barton provided him with generous severance

payments.  Barton admits he received $467,200 in cash severance (*see* Am. Compl. Ex. 10), as

well as the acceleration of vesting of 40,000 shares of restricted MSLO stock (valued at

$400,463 in the Company's 2009 proxy statement[2]) that had been granted to him during his

---

[1] Even though he did not begin work until 2007 was nearly over, Barton also negotiated for (and received) a guaranteed bonus of $210,000 in respect of services rendered in 2007.  *See* Am. Compl. Ex. 1 ¶ 5.

[2] This Court can take judicial notice of relevant documents required to be filed with the SEC, such as the Company's proxy statement referenced above.  *In re Am. Int'l Group, Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 529 (S.D.N.Y. 2010).  The Court may also consider these proxy statements because they were available to Plaintiff—indeed, Barton attached pages from MSLO's SEC filings, thus showing both that Plaintiff relied on the Company's public filings in crafting his complaint and that their consideration neither requires this Court to engage in factfinding nor causes any prejudice to Plaintiff.  *Cf. Berman v. Sugo*, 580 F. Supp. 2d 191, 200-01 (S.D.N.Y. 2008); *cf. also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

employment (but none of which otherwise had vested by August 2008 when he was let go), plus the extension of health benefits, and approximately $30,000 in career placement services. *See* Am. Compl. ¶ 23 (referencing § 2.07 of the Plan); *id.* Ex. 3 (referencing outplacement benefits pursuant to § 2.07(3) of the Plan); *id.* Ex. 4 (same); and *id.* Ex. 9 (acknowledging receipt of outplacement benefits). Indeed, according to the proxy statements to which the Complaint refers, the Company paid Barton nearly *$1.4 million* in total compensation even though he worked there only for nine months.

Barton received ample severance benefits because he negotiated carefully for them. That is no surprise given that, as he alleges, Barton is a sophisticated, Harvard Law School-trained business lawyer who has been the General Counsel of several media companies, public and private, Am. Compl. ¶ 3, many of which were Delaware corporations like MSLO. Cuti Decl. ¶ 6 & Exs. 4, 5 & 6. Barton's employment agreement with MSLO (the "Contract") expressly incorporates the entirety of the 2005 Executive Severance Plan by reference. *See* Am. Compl. Ex. 1 ¶ 13. The Plan, as it applied to other executives, was set to expire on December 31, 2007—only two months after Barton was to begin working at MSLO. Yet Barton persuaded the Company to agree that the Plan would *never* expire as to him; better still for Barton, he successfully negotiated for an option to participate in any future, more lucrative, severance plan that MSLO might offer for "senior executives" like him. *Id.* Barton's Contract did not otherwise alter the terms of the 2005 Executive Severance Plan.

That Plan is an unfunded, deferred compensation plan for highly paid senior executives like Barton. *See, e.g.*, Am. Compl. Ex. 1 ¶¶ 1, 3, 4 & Ex. 2 (text of the Plan characterizing itself as an "executive severance pay plan," enacted for the purpose of "better provid[ing] for the retention of key executives"). The Plan's drafters "intended [it] to be a severance pay plan

governed by . . . ERISA," for which "[a]ll benefits would be paid solely from the general assets of the Company."  Am. Compl. Ex. 2.  The Plan sets forth in express terms the severance benefits to which the Plan's participants are entitled, *id.* § 2.07, while also giving the Compensation Committee extremely broad discretion in its administration of the Plan, *id.* § 4.02. The Plan also contains a choice-of-law provision, reflecting the parties' agreement that a court deciding disputes under the Plan must apply Delaware law "to the extent not preempted" by ERISA.  *Id.* § 5.10.

On August 5, 2008, the Company terminated Barton's employment, effective immediately.  That day, in an email to two Company executives, Barton explained the severance pay he believed was owed to him:  (1) a pro-rata bonus; (2) $680,000 representing a year's base salary and 100% of his target annual bonus for 2008; (3) continuation of health and life insurance benefits; (4) accelerated vesting of equity; and (5) outplacement benefits.  Am. Compl. Ex. 3. His email explicitly and repeatedly referenced the Plan as the source of entitlement to the severance payments he sought.  *Id.*  On August 14, 2008, Barton sent another similar email demand for severance benefits under the Plan.  Am. Compl. Ex. 4.  In accordance with the Plan's deferred payment provisions that took into account Section 409A of the IRS Code ("Section 409A") (*see* Plan § 2.06), on or about February 17, 2009 (after the six-month deferral period required by Section 409A had elapsed), the Company confirmed to Barton that he would not receive the full amount of severance benefits he sought, because he—like virtually every other MSLO employee—would receive 15% rather than 100% of his target annual bonus for services rendered in 2008.  Am. Compl. Ex. 5.

Unable to accept that he, like hundreds of other MSLO employees, would be affected negatively by the historic economic crisis of late 2008, and despite having received severance

benefits worth almost a million dollars for nine months of work, on February 3, 2012, Barton filed a Complaint, asserting nine claims against MSLO, its Compensation Committee (which administers the Plan), the Plan, and ten John Doe defendants.  The claims included two ERISA breach-of-fiduciary-duty claims, one claim for injunctive relief under ERISA, one claim for breach of the Plan, and four state-law claims.   The Complaint sought $380,800 representing the allegedly unpaid severance benefits, $380,800 in liquidated damages pursuant to the New York Labor Law, unspecified punitive damages, equitable relief, and attorney's fees.  *See generally* Compl.

Counsel for Defendants, pursuant to Your Honor's Individual Practices, wrote to Plaintiff's counsel in an effort to explain, in detail, why every claim alleged in the Complaint is meritless as a matter of law.   Plaintiff's counsel responded, and though he disagreed in material part with the undersigned's letter, he did state that Barton would withdraw his ERISA and New York claims for breach of fiduciary duty, and his prayer for punitive damages.  *See* Cuti Decl. Ex 1 at 5-6; *id.* Ex. 2 at 5.  Again pursuant to the Court's rules, counsel then conferred and discussed the matter further, with Plaintiff's counsel rejecting Defendants' counsel's request to reconsider the matter and to withdraw all the state law claims and any claim for injunctive relief.  With Defendants' consent, Barton filed the Amended Complaint, which omits the ERISA and state-law claims for breach of fiduciary duty, the prayer for punitive damages, and—despite Barton's counsel's previous refusal to withdraw the claim—Barton's request for injunctive relief.  *See generally* Am. Compl.  The Amended Complaint also withdraws the claims asserted in the Complaint against ten John Doe defendants.

This motion followed.  Although the Amended Complaint did drop the baseless claims noted above, every claim it asserts is deficient as a matter of law.  Barton's state-law claims are

all preempted by ERISA, and his sole ERISA claim is time-barred.  This should have been clear to Barton from the pre-motion correspondence and subsequent discussion.  Accordingly, Defendants now move this Court to dismiss the Amended Complaint in its entirety.  Should Defendants prevail in whole or in part on this motion, they intend to seek to have Barton pay their attorneys' fees reasonably expended moving against his Amended Complaint, which he should have known would fail as a matter of law.[3]

## ARGUMENT

### I.   Legal Standard

A complaint must be dismissed unless it pleads "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006); *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949-50 (2009).  "In deciding a motion to dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party.  The issue is whether the plaintiff is entitled to offer evidence to support the claims."  *In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 631 (S.D.N.Y. 2008) (internal citations and quotation marks omitted).

---

[3] ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1), instructs that a "court in its discretion may allow a reasonable attorney's fee and costs … to either party."  Unlike other fee-shifting regimes, ERISA does not require that a party be *the* "prevailing party" to seek and be awarded attorney's fees. *Hardt v. Reliance Standard Life Ins. Co.*, --- U.S. ---, 130 S. Ct. 2149, 2156 (2009).  Instead, a party need demonstrate only "some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)."  *Id.* at 2158.  As the Supreme Court explained in *Hardt*, this threshold requirement is low: A claimant satisfies "it if the court can fairly call the outcome of the litigation *some* success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue."  *Id.* (brackets and internal quotation marks omitted; emphasis added).  And there is no question that prevailing on a Rule 12(b)(6) motion in whole or in part is prevailing on the merits.  *See, e.g.*, *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) (stating that "a dismissal under Rule 12(b)(6) is a dismissal on the merits of the action").  As this memorandum makes clear, and as should have been clear to Barton from the exchange of pre-motion letters, all of Plaintiff's claims either are preempted or time-barred.

"A court considering a motion to dismiss is normally required to look only to the allegations on the face of the complaint," but "in certain circumstances, the court may permissibly consider documents other than the complaint," such as "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.,* 741 F. Supp. 2d 511, 529 (S.D.N.Y. 2010) (internal brackets, citations, and quotation marks omitted); *see also* note 2, *supra.*

## II.     Barton's State-Law Claims Are Preempted by ERISA

Each of Barton's state-law claims—under both New York's common law and its Labor Law—asserts the same basic wrong:  that Defendants denied him benefits he was due under the 2005 Executive Severance Plan.  Given ERISA's plain preemptive language and the numerous Supreme Court and lower federal court opinions broadly interpreting the statute's preemptive scope, each state-law claim must be dismissed as preempted by federal law because each is "related to an employee benefit plan." *Nelson v. Nielson Media Research Inc.*, 207 F. Supp. 2d 300, 302 (S.D.N.Y. 2002) (quoting *Devlin v. Transportation Commc'ns Int'l Union*, 173 F.3d 94, 101 (2d Cir. 1999)) (internal quotation marks omitted).

As the statute's plain language makes clear, Congress intended ERISA to have a comprehensive preemptive effect, barring state-law claims that would duplicate, undermine, or otherwise be inconsistent with the protections afforded in ERISA.  *See* ERISA § 514, 29 U.S.C. § 1144.  ERISA's preemption provisions are "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) (alteration, ellipsis, and internal quotation marks omitted).  By its very terms,

7

ERISA preempts any state-law claim that "relate[s] to any employee benefit plan."[4]  29 U.S.C. § 1144(a).  The term "relates to" is "given its broad common-sense meaning, such that a state law 'relates to' a benefit plan . . . if it has a connection with or reference to such a plan."  *Dedeaux*, 481 U.S. at 47 (alteration omitted).  And, as the Supreme Court repeatedly has emphasized, ERISA's preemptive effect "is not limited to state laws specifically designed to affect employee benefit plans."  *Dedeaux*, 481 U.S. at 47-48 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983)) (internal quotation marks omitted).  To the contrary, ERISA preempts "*any* state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (emphasis added).

Barton asserts his federal claims under ERISA § 502(a), 29 U.S.C. 1132(a), the statute's civil-enforcement provision.  Am. Compl. ¶ 8.  The Supreme Court has made clear that Congress intended § 502(a) to provide "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."  *Dedeaux*, 481 U.S. at 52; *id.* at 54 (stating that "the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme," and that its "civil enforcement remedies were intended to be exclusive"); *id.* at 56 (explaining that state laws cannot "supplement[] or supplant[]" section 502 of ERISA).  And as the Second Circuit expressly has held, "severance pay is an unemployment benefit and an unfunded severance pay policy constitutes an 'employee welfare benefit plan' under [29 U.S.C.] § 1002(1)(A)," such that a claim alleging denial of severance falls under and must be brought through ERISA's enforcement provision, § 502(a).  *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 324 (2d Cir. 1985), *aff'd* 477 U.S. 901 (1986).

---

[4] There are a few explicit exceptions to this broad preemption rule, including laws "regulat[ing] insurance, banking or securities," 29 U.S.C. § 1144(b)(2)(A), but none of the exceptions even arguably applies to this garden-variety suit for severance benefits.

Because all Barton really seeks is severance benefits under an ERISA Plan, all his state common-law claims are preempted.  Barton's state-law contract claim alleges a breach *only* of the Contract provision—Am. Compl. Ex. 1 ¶ 13—that relates to his right to severance benefits, a provision that expressly incorporates the terms of the 2005 Executive Severance Plan.  *Compare* Am. Compl. ¶ 45 *with id.* ¶ 48; *see also Id.* Ex. 1 ¶ 13.  It has long been the law of this Circuit that ERISA supersedes and preempts all state-law causes of action "based on claims for relief under the common law of contracts," when such claims relate to a severance or employee benefit plan.  *Gilbert*, 765 F.2d at 328; *Tappe v. Alliance Capital Mgmt. LP*, 177 F. Supp. 2d 176, 187 (S.D.N.Y. 2001) (dismissing the plaintiff's claim for breach of an implied contract as preempted by ERISA where the plaintiff sought severance benefits under "the most favorable plan, practice or policy applicable to him") (emphasis omitted)).

The same is true for Barton's claim for breach of the implied duty of good faith and fair dealing.  *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (Jacobs, *C.J.*) (dismissing New York common-law claim for breach of the covenant of good faith and fair dealing where the claim "require[d] reference to the Plan in the calculation of any recovery" and therefore "relate[d] to a covered [ERISA] plan" (internal quotation marks omitted)).

To the extent Barton argues in his opposition to this motion that his contract and other New York common-law claims are based not on the Plan but on his employment contract, and therefore do not "relate to" the ERISA plan, such a contention would be baseless in light of controlling precedent.  *See, e.g., Dedeaux*, 481 U.S. at 42; *supra* at 7-9.  Barton does not seek to enforce a contract provision that has meaning independent of the Plan, as he arguably would if his claim were based on, *e.g.*, the provision of the Contract guaranteeing him a one-time 2007 bonus of not less than $210,000 (a benefit not offered by the Plan).  *See* Am. Compl. Ex. 1 ¶ 5.

Such a claim might significantly alter the preemption analysis.  But here, each of Barton's common-law claims seeks to hold Defendants responsible for alleged violations *of the Plan* as incorporated into Barton's employment contract.  *See* Am. Compl. ¶¶ 15, 46-51.  The provision of the Contract on which Barton bases his state-law claims does not impose any duty independent of the Plan; rather, it *reaffirms* that the Plan applies to Barton.  *See Davila*, 542 U.S. at 210 (unanimously holding that state-law claims are preempted "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions"); *id.* at 213 (noting that preemption is appropriate where "interpretation of the terms of [the] benefit plans [at issue] forms an essential part of [the plaintiff's non-ERISA claim]"); *id.* (concluding that claims were preempted where the defendants' alleged liability for the state-law causes of action "derive[d] entirely from the particular rights and obligations established by the benefit plan[]").

Indeed, courts in the Second Circuit routinely dismiss as preempted claims like Barton's that allege a common-law breach-of-contract claim where the only breach asserted is that the employer violated the employment letter or contract by miscalculating or denying benefits owed pursuant to an ERISA plan referenced in the employment document.  *See, e.g.*, *Kishter v. Principal Life Ins. Co.*, 186 F. Supp. 2d 438, 446-47 (S.D.N.Y. 2002) (noting, in case alleging breach of an employment contract by virtue of the defendant company's refusal to pay ERISA-plan benefits, that "[n]umerous decisions in this Circuit make clear that breach of contract claims arising from a failure to pay benefits under an ERISA plan are preempted"); *Keiser v. CDC Inv. Mgmt. Corp.*, 160 F. Supp. 2d 512, 516-17 (S.D.N.Y. 2001) (holding that New York contract claim asserting that denial of ERISA benefits constituted a breach of a resignation agreement was preempted by ERISA); *id.* at 517 (collecting cases); *Engler v. Cendant Corp.*, 380 F. Supp.

2d 136, 140 (E.D.N.Y. 2005) ("The common law contract claim at issue in this case clearly relates to an employment benefit plan because it challenges IBM's calculation of the Plaintiff's entitlement to benefits under the plan.  Resolution of the claim would necessarily involve interpreting the plan, its design, and ERISA." (internal quotation marks omitted)).  The Contract accordingly affords Barton no escape from ERISA's far-reaching preemptive effect.  *See, e.g.*, *Paneccasio*, 532 F.3d at 114; *Devlin*, 173 F.3d at 101; *Gilbert*, 765 F.2d at 324, 328.

Barton's New York Labor Law claim also is plainly preempted.  As an initial matter, the Supreme Court has held that ERISA's preemptive scope is not limited to state laws that are specifically directed at or intended to affect ERISA plans, or which conflict with ERISA's substantive provisions.  *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 129-30 (1992).  It therefore is irrelevant to the preemption analysis that the New York Labor Law provisions at issue do not expressly mention ERISA or employee benefit plans.  Indeed, in 1994, the U.S. Department of Labor ("DOL") was asked to opine on whether ERISA preempts claims under New York Labor Law § 193, one of the two sections at issue in the Amended Complaint.  The DOL concluded that § 193 "is preempted by . . . ERISA."  U.S. Dep't of Labor Advisory Opinion No. 94-27A (July 14, 1994), *available at* http://www.dol.gov/ebsa/programs/ori/advisory94/94-27a.htm (last accessed April 5, 2012).  Courts in the Southern District have adopted the DOL's analysis and have reached the same result with regard to claims relating to ERISA plans brought under that section of the Labor Law.  *See Henry v. Dow Jones*, No. 08 Civ. 5316, 2009 WL 210680, at *1, *4 (S.D.N.Y. Jan. 28, 2009) (determining that the plaintiff's state-law claims were preempted by ERISA, including claims for breach of contract and violation of Labor Law § 193).

Both the Second Circuit and multiple judges in the Southern District have held that claims brought under sections 191 and 198 of the Labor Law—which Barton also invokes—likewise are preempted by ERISA. *See Gilbert*, 765 F.2d at 327; *Karmilowicz v. Hartford Fin. Servs. Grp.*, No. 11 Civ. 539, 2011 WL 2936013, at *14 (S.D.N.Y. July 14, 2011) (dismissing Labor Law §§ 191 and 193 claims as preempted by ERISA); *Aminoff v. Ally & Gargano, Inc.*, No. 95 Civ. 10535, 1996 WL 675789, at *5 (S.D.N.Y. Nov. 21, 1996) (dismissing as preempted the plaintiffs' Labor Law §§ 191 and 198 claims). Barton's Labor Law claim expressly seeks to recover "wages" owed to him under the Plan—indeed, Barton goes out of his way to allege that severance payments (*i.e.*, the very (and only) benefit the ERISA Plan provided) are "wages" under the New York Labor Law. *See* Am. Compl. ¶¶ 56-57. The law could not be clearer that a plaintiff cannot seek to recover severance benefits provided by an ERISA plan by asserting a state law cause of action, *particularly* one with enforcement remedies ERISA does not provide, such as the Labor Law's damages-doubling provision. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145-47 (1985). Indeed, courts, including the Supreme Court, repeatedly have held that the fact that state law provides a remedy not available under ERISA militates *in favor* of preemption, or at the very least is a neutral factor. *See Dedeaux*, 481 U.S. at 54; *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995).

As is therefore apparent, Barton's Labor Law claim is barred by ERISA's exceptionally broad preemption scheme and must be dismissed. *Aminoff*, 1996 WL 675789, at *5 (dismissing New York Labor Law claims for "wages" as preempted by ERISA).

### III.    Barton's Sole Remaining ERISA Claim is Time-Barred

The only remaining claim is Barton's claim for breach of contractual duties under an ERISA plan (Claim One).  This claim too must be dismissed, because the parties agreed to apply Delaware law, and Barton's claim is untimely under that state's one-year statute of limitations.

Unlike other parts of ERISA,[5] the civil enforcement provision under which Barton sues, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), does not provide its own statute of limitations. Courts therefore must "borrow" the most analogous state-law statute of limitations.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158-60 (1983); *Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension Ben. Plan*, 698 F.2d 593, 598 (2d Cir. 1983).  The Second Circuit, like every other Circuit to address the issue, has applied the statute of limitations for a state contract action to claims pursuant to ERISA § 502(a)(1)(B).  *Miles*, 698 F.2d at 598; *see also Syed v. Hercules, Inc.*, 214 F.3d 155, 159 (3d Cir. 2000) (citing cases from the 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Circuits).

Where a federal court considers a federal-law claim that does not supply its own statute of limitations, the court must look to federal common law to determine which state's law to apply.  *DelCostello*, 462 U.S. at 159 n.13, 161; *see also Phelan v. LOCAL 305*, 973 F.2d 1050, 1058 (2d Cir. 1992).  Federal question cases like this ERISA action do not implicate the rule of *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941), in which the Supreme

---

[5] The administrators of many ERISA plans are subject to fiduciary duties and ERISA specifically provides a statute of limitations for breach-of-fiduciary-duty claims.  29 U.S.C. § 1113.  Barton originally alleged breaches of fiduciary duty, *see* Compl. ¶¶ 44-52 62-64, but because the Plan is a "Top Hat" Plan—an unfunded, deferred compensation plan for highly paid senior executives—it does not impose any fiduciary duties on its administrators.  *Paneccasio*, 532 F.3d at 108 (stating that "Top hat plans . . . are exempt from many provisions of ERISA, including the participation and vesting, funding, and fiduciary responsibility requirements" and affirming dismissal of claim for breach of fiduciary); *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000) (same).  Because, as noted above, the Amended Complaint abandons any claims of breach of fiduciary duty, the ERISA statute of limitations for such claims *and such claims only*, 29 U.S.C. § 1113, is irrelevant here.

Court held that a federal court *sitting in diversity* must apply the choice-of-law rules of the forum state.  *See Beattie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006) (*Klaxon* applies only to federal courts sitting in diversity).  Here, then, the Court's role is to decide, according to federal law, what state's statute of limitations to apply to the ERISA § 502(a)(1)(B) claim.  *See Syed*, 214 F.3d at 160 (stating that with regard to claims brought under § 502(a)(1)(B) of ERISA, "the selection of an appropriate statute of limitations is a question of federal law"); *see also DelCostello*, 462 U.S. at 159 n.13.

The parties have made the Court's task easier by agreeing that Delaware law would govern all aspects of the Plan that are not preempted by ERISA.  *See* Am. Compl. Ex. 2, § 5.10 ("Governing Law.  The Plan shall be governed by ERISA, and, to the extent not preempted thereby, the laws of the State of Delaware.").  This contractual choice-of-law provision squarely applies to the statute of limitations for Barton's § 502(a) claim:  Because ERISA does not provide the governing limitations period, the parties must look to a state's law, and the Plan stipulates that that state will be Delaware.  *See Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128 (9th Cir. 1993) ("Since ERISA does not supply a statute of limitations in this case, it cannot preempt the applicable state law statute of limitations.").   Indeed, given ERISA's expansive preemptive sweep, the *only* aspect of Barton's claims that ERISA does not preempt is the statute of limitations governing his § 502(a) claim.  And the parties agreed that Delaware law would supply that limitations period.

As in most contexts, federal courts generally enforce choice-of-law provisions in ERISA plans.  *Wang Labs.*, 990 F. 2d at 1128; *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918 (6th Cir. 2006) (applying choice-of-law provision in an ERISA plan); *Buce v. Allianz Life Ins. Co.,* 247 F.3d 1133, 1149 (11th Cir. 2001) (quoting *Wang Labs.*);

*Barnes v. Am. Int'l Life Assur. Co. of N.Y.*, 681 F. Supp. 2d 513 (S.D.N.Y. 2010) (collecting

cases).  *Cf. also Greenberg v. Aetna Life Ins. Co.*, 421 F. App'x 124, 125 (2d Cir. 2011)

(summary order) (affirming enforcement of ERISA disability plan's choice-of-law clause over

the plaintiff's objection).  Indeed, contractual choice-of-law provisions support ERISA's goal of

ensuring predictability for both plan participants and the companies offering the benefits,

*DaimlerChrysler*, 448 F.3d at 928, and are "less burdensome to a plan beneficiary than choice of

forum, because he can litigate in his home state," *Wang Labs.*, 990 F.2d at 1129.  As the Ninth

Circuit has observed, "[t]he benefits of enforcing the contractual choice of law redound

ultimately [both] to the beneficiaries . . . and to the 'soundness and stability of the plans,' an

explicit statutory objective of ERISA."  *Id.* (quoting ERISA, 29 U.S.C. § 1001(a)); *see also*

*DaimlerChrysler*, 448 F.3d at 928 ("[e]nforcing choice of law provisions in ERISA plans takes

[ERISA's] object of uniformity one step further by ensuring that all issues not preempted by

federal law will be resolved by application of the chosen state's law.  In general, this too will add

certainty to the claim administration process leading to more efficiency and less litigation.").

Federal courts applying federal common law look to the Restatement (Second) of

Conflict of Laws (the "Restatement") § 187 for guidance regarding the enforceability of a

contractual choice-of-law provision.  *DaimlerChrysler*, 448 F.3d at 922; *see also* Patrick J.

Borchers, *Choice of Law in the American Courts in 1992*, 42 Am. J. Comp. L. 125, 136 (1994)

(characterizing acceptance of § 187 as "a nearly universal principal" in American courts).

Restatement § 187 provides in pertinent part:

> (1) The law of the state chosen by the parties to govern their contractual rights
> and duties will be applied if the particular issue is one which the parties could
> have resolved by an explicit provision in their agreement directed to that issue.

Restatement (Second) of Conflict of Laws § 187(1).[6]

The language of the Restatement is obligatory; it states that the contract's choice of law "*will*" be applied if the particular issue at which the choice-of-law clause was directed—*i.e.*, any aspect of the Plan not governed by ERISA, which, given ERISA's exceedingly broad preemptive sweep means *only* the statute of limitations to be applied to the § 502(a)(1)(B) claim—could have been resolved explicitly in the Plan.  That is true here.   It is settled that the parties to a Plan can agree to a limitations period that differs from any state's.  *See, e.g.*, *Yuhas v. Provident Life & Cas. Ins. Co.*, 162 F. Supp. 2d 227, 231 (S.D.N.Y. 2001) ("when a written agreement between the parties, such as an [ERISA long-term disability plan], stipulates a shorter limitations period, the shorter period governs."); *Viti v. Guardian Life Ins. Co. of Am.*, 817 F. Supp. 2d 214, 224 (S.D.N.Y. 2011) (stating, in the context of an ERISA plan, that "parties to a contract may agree on a limitations period shorter than that prescribed by statute").  *Cf. also Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009) ("Finally, because we apply rules of contract law to ERISA plans . . . a court must not rewrite,

---

[6] Though not relevant here for reasons discussed in the text, for the sake of completeness, Sections (2) and (3) of Restatement § 187 provide:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a)  the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b)  application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

under the guise of interpretation, a term of the contract when the term is clear and unambiguous, . . . as is the policy-prescribed limitations period at issue here." (internal quotation marks and citations omitted)).  As these cases and the Restatement demonstrate, the issue here simply is one of contract interpretation; there is no conflict-of-laws issue for the Court to decide.  *See* Restatement § 187(1), cmt. c (explaining that the question in considering a contractual choice-of-law provision is not one of conflict of laws but rather one of e contract law, and that "parties, generally speaking, have power to determine the terms of their contractual engagements").  The choice-of-law clause here therefore falls squarely within section 187(1), and there is no reason this Court should not do what the Restatement § 187(1) commands:  apply the law of the state that the parties negotiated and chose.

Although some courts have carved out a narrow exception to the enforcement of choice-of-law provisions where such enforcement is "unreasonable or fundamentally unfair," *Wang Labs.*, 990 F.2d at 1128, in this case, applying the Delaware law that the parties chose is particularly fair.  Barton is a sophisticated Harvard-trained lawyer who had been the general counsel and/or senior executive or financial officer of several Delaware companies.  *See* Cuti Decl. Exs. 4, 5 & 6 (SEC filings for Alliance Semiconductor Corp., Ziff Davis Holdings Inc., and Index Development Partners, Inc.).  MSLO is a Delaware corporation.  Barton's Contract reflects the aggressive and careful approach he took when negotiating for his severance rights. Barton successfully persuaded MSLO to agree that the 2005 Executive Severance Plan would *never* expire *as to him* (even though it expired on December 31, 2007 for every other senior executive it covered).  When the Company terminated his employment in August 2008, Barton—with knowledge of the contents of the Company's then-in-force 2008 Executive Severance Plan—again expressly affirmed his choice to be bound by and receive benefits under the 2005

17

Plan and again reaffirmed that the terms of the 2005 Executive Severance Plan had been incorporated by reference into his Contract.  *See* Am. Compl. Ex. 3.  Barton's Contract, including its wholesale incorporation of the "terms and conditions" of the 2005 Plan, was the result of a negotiation at arms' length between sophisticated parties who understood the benefits and drawbacks of their bargain.  Having traded on this successful negotiation to receive nearly $1.4 million for nine months' work, Barton cannot now escape the choice-of-law provision to which he expressly agreed, and that he knew was a "term and condition" of the preferential employment and severance benefit terms he sought—and won.[7]

The applicable Delaware limitations period is one year.  Delaware has two statutes of limitation for contract actions:  The first, which is three years, covers general actions on a promise, *see* Del. Code Ann. tit. 10, § 8106; the second, which is one year, specifically covers employment disputes, including actions "for any other benefits arising from . . . work, labor, or personal services performed," Del. Code. Ann. tit. 10, § 8111.  In 2000, the Third Circuit was called upon to determine which of these two contract-based statutes of limitation was more appropriate to ERISA actions under § 502(a)(1)(B).  In an opinion by now-Justice Alito, the Third Circuit selected the latter, squarely holding that although the "one-year statute of limitations . . . is short, [it is not] inconsistent with the policy of ERISA," and applies to claims brought under ERISA's civil enforcement provision.  *Syed*, 214 F.3d at 161; *see id.* at 159-61 (analyzing which of the two limitations periods to apply).  Applying this one-year limitations period, Barton's ERISA claim is untimely.  According to the Amended Complaint, the limitations period began to run on February 17, 2009, when Barton received the letter from MSLO outlining the severance benefits he would be receiving.  *See* Am. Compl. Ex. 5.

---

[7] The Contract itself has no choice of law provision other than the one incorporated by reference to the Plan.  *See* Am. Compl. Ex. 1.

Accordingly, the statute of limitations expired on February 17, 2010, at the very latest.  The Complaint was not filed until February 3, 2012, almost two full years after the limitations period elapsed.  Therefore, the ERISA claim is time-barred and should be dismissed.

**IV.     If Barton's ERISA Claim Survives, All Claims Against the Company Should Be Dismissed**

To the extent Barton's ERISA claim survives this motion—which it should not because, as Defendants showed above, it is untimely—the only proper defendants in this action would be the Plan itself and its Administrators, the Compensation Committee.  An ERISA claim "can be brought only against a covered plan, its administrators or its trustees."  *Paneccasio*, 532 F.3d at 108 n.2.  Barton's ERISA claim, however, is also asserted against the Company.  Controlling Second Circuit authority squarely forecloses this.  His ERISA claim against the Company therefore must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and dismiss the Amended Complaint in its entirety.


Dated: April 6, 2012
      New York, New York

                          CUTI HECKER WANG LLP


                          By: _____/s/_____
                              John R. Cuti (JC 3365)
                              Julie B. Ehrlich (JE 1880)

                          305 Broadway, Suite 607
                          New York, NY 10007
                          (212) 620-2601

                          *Attorneys for Defendants*


To:   All Counsel of Record by ECF